Good morning, your honor. May it please the court. Mr. Walker raises two issues for review. I'm going to start by discussing the second issue, which concerns the four level enhancement under United States sentencing guideline 2k2.1b6b for possessing the firearm in connection with another felony offense. Reviewing the briefs, I think this case really now comes down to the resolution of two questions. One of them is whether or not a violation of Iowa Code section 724.4, which is the Iowa statute on carrying weapons, constitutes another felony offense. And secondly, whether or not error in this case is harmless error based on some statements made by the district court at the time of the sentence, Mr. Walker. It's our position that a violation of section 724.4 is another felony offense. Both sides, I think, to get to the point where we're at, both sides have made some concessions. I think the government in this brief is now conceding that only a violation of Iowa Code section 724.4 would justify the enhancement. That's the only Iowa offense that they can conceive of that would result in the enhancement. The defense, on the other hand, is conceding that while I believe a violation of 724.4 is characterized under Iowa law as an aggravated misdemeanor, it is in fact a felony because it carries a maximum penalty of more than a year. We really didn't have the opportunity to test this particular statute at the district court level too much. It wasn't mentioned by the government at the district court level when we were arguing about whether there was some Iowa offense that constituted another felony offense. The government threw out a number of possibilities. Specifically, they mentioned Iowa Code section 724.25, which isn't even an offense, but they did mention carrying weapons at one point. Really, the argument made by the defendant at that time is the same as the argument made by the defendant here, which is that under the application note 14C, that's the underlying firearms offense and cannot be used as an enhancement in this case, cannot be the basis for the four-level enhancement. We didn't get any real guidance from the district court. After we were making the arguments, and as I say, the government suggested various alternatives that might be other felony offenses, I think after a sentence came down, I specifically asked the district court, what felony offense are you relying upon? And the court said, I'll file a written order, thank you? Yes, and that never came, so we don't know. We don't know, but I think at this point, at least for the purpose of this argument, the government is proposing 724.4, and as I say, they did mention carrying weapons at the sentencing hearing without identifying the Code section, so for the sake of this argument, I'll talk about 724.4. Their argument on appeal here is based on a reading of United States v. Jackson, and in Jackson, this court indicated that the fact that another offense is a firearms offense does not necessarily bring it within the note 14C exclusion, and this court really used something of an elements matching test in doing that. The question in the Jackson case, I think, is the defendant doomed to commit the state offense by committing a violation of 18 U.S.C. 922G, which is the offense that Mr. Walker is charged with here, and what the court did in the Jackson case was to compare the circumstances of that case with the circumstances of United States v. Lindquist, which this court decided in 2005, and I think that's instructive here. I think, really, the comparison that you did in the Jackson case would be applicable in this case as well. In the Jackson case, the Missouri statute upon which the court relied as another felony offense was the Missouri statute prohibiting the unlawful use of weapons. Now, there are some elements of that offense that the defendant knowingly exhibits the weapon in presence of one or more persons. By contrast, the Iowa statute that was relied upon in the Lindquist case was ownership of a handgun without a valid annual permit. Now, what the court found in Jackson was that the 14C exclusion applied under the circumstances of Lindquist, but did not apply under the circumstances of Jackson, because under Jackson, the states... I'm having trouble relating what you're talking about to what I thought the issue in the case was. Where are we going with this dissertation? Well, where I'm going is that carrying weapons under 722.4 of the Iowa Code is the underlying felony offense, and so it should be excluded under note 14C of the guidelines. Because it's the same as 922G? In the same respect that the possession of a handgun without a permit was found to be the same offense under Lindquist. Okay, so you're accepting the elements, what you call the elements matching analysis, and you say this is a favorable result here. Yes, and not necessarily the result in Jackson, but the comparison that the court did in Jackson between Jackson and Lindquist, I think it militates toward a decision in this case that this is the same offense in this case as well. There are alternative ways of committing a violation of 724.4 in the Iowa Code that involve possession of a firearm. One can go armed within city limits with a pistol, revolver, or any loaded firearm. One can carry or transport a pistol or a revolver in a vehicle. Now, admittedly, the government comes back and makes the argument is that there are scenarios under which a person can commit a violation of 922G without also violating Iowa Code section 724.4. For example, Mr. Walker could have possessed a gun in his house, and he wouldn't necessarily be guilty of a violation of 922G. Or he could constructively possess the gun, and that's a violation of 922G but not 724.4. But that's where I think the comparison between Lindquist and Jackson is most appropriate, because Lindquist isn't really all that restrictive. Because in Lindquist, there were circumstances under which Mr. Lindquist could have violated 922G and not violate the statute regarding possession of a handgun without a permit. For example, Mr. Lindquist could have had a permit, and he would not be guilty under the Iowa statute, but he'd still be guilty under 922G. And additionally, the- Are you doing a modified categorical approach, or are you saying it has to be categorical and there's not a close enough match? I'm still lost by your- Well, I don't know that Jackson, they characterize it as to whether or not it's a modified categorical approach. I know it, but what are you- But I think the latter, I think, is what would apply under these cases if we read Jackson- But I mean, the government says there's enough non-match that this is Jackson. And you just conceded there are non-matches. There are non-matches, but there were non-matches in Lindquist as well. So Lindquist, so now we've got- You're saying Lindquist was prior, so it's controlling because the two are in conflict? I don't understand the argument. But in Jackson, the court distinguished Lindquist, so Lindquist has some continuing viability. So I think we look at Lindquist, we look at Jackson, and we find there is a spectrum there, there is a line. And I think this case is on the same line with Lindquist and not on the same line with Jackson. Because, essentially, there are some distinguishing points. It is possible to commit a violation of 922G without violating the state statute. Under the specific facts of this case, if Mr. Walker committed the offense, it would be- I thought this was all about there's no evidence he aimed at the House. Well, that's a different- Yes, yes, that's right. That's why it's not what used to be terrorism. I mean, the shooting that went on here goes far beyond a 922G. Well, we're looking at the elements, Your Honor, not the- That's why I'm saying I don't understand what your analysis is. Well, the analysis is, I hate to use the modified categorical approach because they didn't say that in Jackson, but it seemed to be a lot like what they were saying in Jackson, was that there was a matching of the elements- I haven't looked at whether there's a plea colloquy or a trial and a jury instructions or what we have. But if there's anything setting forth the facts that are disclosed in the briefs in this case, we aren't close to a match with a bare 922G. Well, I think it's almost a complete match. That's our position. As a complete match in this case- Shoot it. Shoot even in the air. That's not an element of the Iowa statute. The Iowa statute just precludes the defender from carrying weapons, a firearm, a pistol, or a loaded handgun. It doesn't say anything about discharging the weapons. I'm matching the elements of the state conviction. There were subparts. Factually, there was a discharge of the weapon, allegedly, when the offense was first reported. Factually, there was. But that's not required under the state statute, and it's certainly not required under 922G. So the question is whether or not the defendant can be guilty of the state charge without also being guilty of 922G. And it is admittedly possible. There are ways to violate 724.4 or vice versa. I guess there's ways you can violate 922G without also violating 722.4. But that was the same set of circumstances in Lindquist, and that's my point. Lindquist is not that narrowly drawn. But I don't think you look at the specific facts of the case. You look at the two offenses. You look at the possible state offense. You look at 922G and make the determination as to whether it's the same offense. And it's to the same degree that the Iowa statute and the Lindquist case was the same offense of 922G. I think we can argue here that the Iowa statute, 724.4, is also the same offense for the purpose of this case. That's our position. I don't know if I can make it any more clear, but that's what we're arguing. I mean, obviously, there are some distinguishing elements. Obviously, as I say, there is a requirement that the defendant carry weapons or carry them in a vehicle. Each of the alternatives has a distinguishing element. But in Lindquist's case, the state statute relied upon in that case also had elements that were not necessary for 922G. And nevertheless, this court found that the Note 14c exclusion applied. And so I'm asking that it apply in this case. The second aspect of this issue is whether or not Mr. Walker was prejudiced because the district court made the statement at the conclusion of the trial that even if the four-level enhancement did not apply, the district court would adopt the same sentence. And I think actually the two decisions relied upon by the government really settled this, and I think they support the defendant. I think I rely more on what's in the Baugh case because what the district court did in this case is exactly what Baugh says the district court cannot do. The Baugh says where the sentencing court pronounces an identical alternative sentence not based on any alternative guidelines calculation, but instead intended to cover any and all potential guidelines calculation error, the sentencing court effectively has ignored the requirement of HAC to first determine the appropriate guideline sentencing range for the alternative sentence. And that's exactly what the district court did in this case. District court made a blanket statement that, number one, it talked about 3553A factors after it calculated what the guidelines were with the four-level enhancement. Then it adopted a sentence that was three months over the bottom end of the guideline range under that particular set of circumstances. Then it makes a statement that the court believes that the guideline structure is sufficient to address the 3553A factors, et cetera. And then it finally makes a statement that even if the four-level enhancement didn't apply, I'd still oppose the same sentence. Well, Baugh says you can't just do that. If the district court was following Baugh, it would have determined what the guideline range would have been without the four-level enhancement, which essentially I think is something like 27 to 33 months. We haven't required that in our harmless error cases. I haven't studied Baugh, but I've written on the harmless error question. The district court has to make clear that it would have imposed the same sentence. But the district court simply says I'm going to impose the same sentence without doing any analysis. And what the district court would have done if the four-level enhancement didn't apply would be to basically adopt an 11-month upward departure, and there's no analysis supporting that in this case. Wait a minute. We're not in departure land. Well, it would have been a departure. We're out of the guideline. It would have been a departure. It would have been a variance, but it would have been 11 months. He talks about the 3553A factors. That's variance talk. Well, he talked about the 3553A factors. Then he imposes a sentence three months over the bottom of the guidelines. Then he says the guideline system is sufficient to address all the facts and circumstances in this case, and then throws out this at the very end. Even if it wasn't for this four-level enhancement, I would have given the same sentence. It's our position that that's not sufficient under Baugh. So, for these reasons, I'd ask, unless the court has other questions, I'd ask the court to reverse this conviction, remand this case to the district court for resentencing under this division and for a new trial under Division I. We'll hear from the government. Mr. Crickwell. Thank you. Good morning, and may it please the court. Why do we have to sit around like medieval theologians trying to figure out what should be done in this case? Why do you charge these things if you can't prove these enhancements? Well, Your Honor. I suppose the probation people did that. The probation officer recommended this enhancement. Of course, they always do that. They'll recommend. And, Judge, just to be clear, the probation officer suggested multiple Iowa convictions that could potentially qualify, including the conviction that the government's relying on on appeal, concealing weapons. Right. So what's in the record regarding those convictions? If we were to do a shepherd analysis of those convictions, what do we have to look at? Well, and I should be clear, the defendant wasn't convicted of concealing weapons under Iowa law, of course. So there's no charging document. What was he convicted of? The issue is whether he committed this offense in connection with another felony offense. He doesn't have to be charged and convicted for that other felony offense, Judge. What's in the record of the prior offense you're relying on? Judge, there is no prior offense because the enhancement applies if the defendant committed the firearms offense he's charged with, the federal crime. I see what you're saying. All right. So there's not going to be a charging document. There's not going to be a plea colloquy or jury instructions. If I could, I'd like to start with the harmless error argument because I actually think that's the simplest way to dispose of Mr. Walker's appeal. I'm happy to, of course, talk about the substance of the enhancement. But on harmless error, what the district court did here was a textbook example of making a record for harmless error. He first identified the contested sentencing issue at stake, and there was only one contested issue with sentencing, and that was this four-level enhancement. And after identifying that issue, the court said that even if he was wrong about the enhancement and it didn't apply, the court said that he would certainly have sentenced the defendant to the same sentence. He said it was not just driven by the guidelines but was based on the 3553A factors. And then he went on to discuss those 3553A factors in detail and explain why they supported this sentence even without the enhancement. The first factor he relied on was the aggravated nature of this offense. He said this was not an ordinary felon in possession case. He said it was an aggravated crime. It was associated with violence, specifically a drive-by shooting within the city of Des Moines. He said that that violence was in retaliation for other violence, and what the court was referring to there was that the victim or the person who lived in the house where the drive-by shooting occurred was a state's witness in a murder case. All of that evidence was in the record. He also pointed to the defendant's history and characteristics. He noted that the defendant had a 2004 conviction for armed robbery at gunpoint. The defendant's work release had been revoked after he was released on that conviction. And after he was eventually released from custody, the court noted that four months after getting out of custody, he's doing a drive-by shooting of a state's witness in a murder case in Des Moines. In addition to that, the court said that there was a need for deterrence in this case and a need to protect the public, and I think all of those 3553A factors either by themselves but certainly in combination are an adequate explanation of why the court thought that the sentence he imposed was justified even without this particular enhancement. And I would point this court to its decision in United States Against Sales where I think the court outlined just what the district court did here. The court said in Sales, we found harmless sentencing error when a court specifically identifies the contested issue and potentially erroneous ruling, sets forth an alternative holding supported by the law and the record in the case, and adequately explains its alternative holding. That is precisely what the district court did here. So if nothing else, any error was harmless, and the court made a detailed record with compelling discussion of the 3553A factors to support that conclusion. So I think this court can decide the case on harmless error and doesn't have to wade in to the issue about the enhancement, but I'm happy to do so now. So if I understand the government's position, leaving harmless error aside, we have the offense conduct facts, primarily paragraph 9 of the PSR, to which I don't see that the probation officer does not indicate there was an objection. That's right. So we can take those facts? Yes. Okay. And now the question is if we take those facts, can we find a felony offense in the Iowa Criminal Code that they would violate? Correct, Your Honor. That's the issue. And one would intuitively think there has to be one somewhere. One would. So in your view, if you could charge those facts and then say this violates 724.4 and a judge could so instruct and the jury could so find, that's all that is required for this enhancement? Yes, Your Honor. Okay. Now I understand the land situation. And I think everyone agrees the enhancement or the Iowa statute or the offense we're relying on is carrying weapons. And the bottom line is that carrying weapons under Iowa law is different than being a felon in possession under federal law. They're two different offenses. The elements are different. So, for example, and this is something the Court stressed in both Jackson and English, which are cases both parties cite, the question in those cases was whether possession of a firearm or use of a firearm is an element of the estate offense. And it is not necessarily an element of the Iowa offense of carrying weapons. That offense can be committed with any sort of dangerous weapon, at least in certain circumstances, and that could include a switchblade or a taser or other types of weapons. So possession of a firearm is not necessarily an element of that offense. And it's not true that anybody who violates the Iowa Code of carrying weapons also violates 18 U.S.C. Section 922G. As I said, if you possess another type of dangerous weapon, you can violate the statute. And I think counsel was wrong in his interpretation of Lindquist. Lindquist, the state statute, was essentially carrying a firearm without a permit. But under Iowa law, anyone who violated the federal statute must have violated the Iowa statute because under Iowa law, convicted felons couldn't have permits. So there really was no daylight between the Iowa code in this case and the federal code. It's also true that you can violate the federal statute without violating the state statute in our case. So, for example, a person who possesses a gun in a home but is a convicted felon is obviously guilty of being a felon in possession. He would not be guilty of any offense under the Iowa code. The Iowa code requires the defendant to bring that firearm out into public, to bring it, in some cases, within city limits or to transport it in a car. So the offenses are different. This is simply not the same offense as the offense of being a felon in possession. The elements are different for both offenses, and it's not the same crime. Again, I think this enhancement was justified based on the record before the court. Why did Mr. Burns then ask? I'd ask the court to indicate what the felony was that he engaged in. Are you suggesting that Mr. Burns was trying to inject ambiguity into the record? No, I don't think that. I think actually Mr. Burns was trying to clarify the record. And why didn't the district court clarify it? The judge, as the record indicates, the judge said he would file a written order, and that written order was never issued. Did anyone ask the court to do it? No, none of the parties asked for a written order after the sentencing hearing. But what I think is true is that, at a minimum, the defendant was not, there was no surprise that this felony was at least, the state offense was at least a candidate for enhancing his sentence. It was identified both in the PSR, and it was identified by the government at the sentencing hearing. So this wasn't something that we're picking out of thin air on appeal, Your Honor. It is true, however, that the district court did not make a specific finding about what the felony was. There's no question about that. So it's up to us to find it. Well, this court can affirm on any basis supported by the record, and we What does that mean? Well, if the record supports a fine In other words, if we can find a felony that fits, we can affirm. That is right, Judge. Well, maybe that's why I was all exercised about being a medieval theologian, which is part of my poor figure of speech, but I had to get it off my chest. I understand, Your Honor, and I also think that, if nothing else, this court can rely on the district court's findings that the 3553A factors support this sentence, regardless of that enhancement, and find that any error, if there was one, was harmless. I'm happy to answer any additional questions, but if there are none, we would ask the court, I'll rest on my brief for the issue raised in the first part of defendant's brief, and we would ask the court to affirm the defendant's conviction and sentence. Very well, thank you. Thank you. Does Mr. Burns have time for rebuttal? He has 16 seconds. Oh, well, we'll give you a couple of minutes, Mr. Burns, so try to, if you can clarify. Well, Your Honor, I don't know if I should refer to myself in the first person or the third person, but Mr. Burns asked a question of the district court after the sentence was pronounced, basically because Mr. Burns was persuaded that there wasn't another felony that would qualify for the four-level enhancement and was confident that that was the answer. I think asking at that point and getting the assurance from the district court that the district court was going to file a written order clarifying that, I think that was me asking the court to file a written response, and we never got that. And then and today I'm confident that there is no felony that qualifies for the enhancement. Very well, that's straightforward and brief. Case is submitted. We will take it under consideration.